IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:08-CV-396-FL

| | |
|---|---|
| AMERICAN PETROLEUM INSTITUTE, and NATIONAL PETROCHEMICAL AND REFINERS ASSOCIATION,<br><br>Plaintiffs,<br><br>v.<br><br>ROY A. COOPER, III, ATTORNEY GENERAL OF THE STATE OF NORTH CAROLINA,<br><br>Defendant. | MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE BY NORTH CAROLINA PETROLEUM AND CONVENIENCE MARKETERS ASSOCIATION<br>**(Rule 24, Local R. 7.2)** |

The North Carolina Petroleum and Convenience Marketers Association ("Association") submits this Memorandum of Law in support of its Motion to Intervene pursuant to Fed. R. Civ. P. 24 and Local Rule 7.2.

**SUMMARY OF THE CASE AND STATEMENT OF PERTINENT FACTS**

The Association is a statewide trade organization composed of nearly 300 independent businesses engaged in the marketing of petroleum and convenience products throughout the State. (Affidavit of Gary Harris ("Harris Aff.") ¶ 3.) It was created in 2007 through a merger between two longstanding trade associations—the North Carolina Petroleum Marketers Association and the North Carolina Association of Convenience Stores. (*Id*. at ¶ 4.) The Association represents its members before various legal,

administrative, and regulatory bodies on issues of importance to its members. (*Id*. at ¶ 5.) Although the members of the Association operate businesses in North Carolina, some members also have significant operations and offices in other states. (*Id*. at ¶ 6.)

Retailers and distributors of petroleum products purchase fuel from the major oil suppliers at various terminals located in North Carolina. In light of Federal policy favoring the use of ethanol-blended fuel ("E10"), many retailers and distributors are now selling E10 to their customers. Many retailers and distributors elect to purchase *unblended* fuel at the terminals and blend it with ethanol at their own facilities—*i.e.*, "below the terminal rack"—and federal tax credits are available to retailers and distributors who do so. The blending of E10 below the terminal rack often occurs through a process known in the industry as "splash blending."

In August 2008, the Governor signed into law Session Law 2008-222 (the "Ethanol Blending Statute"), which preserves the ability of retailers and distributors to purchase unblended fuel and blend it with ethanol below the terminal rack—an option that also allows retailers and distributors the ability to claim the federal tax credit.

Plaintiffs ask this Court to strike down the Ethanol Blending Statute as unconstitutional on the ground that it violates the Supremacy Clause and the dormant Commerce Clause of the United States Constitution. This relief, if granted, would substantially impact the business operations of the Association's members that are engaged in the marketing of E10. Plaintiffs' Complaint and their motion for summary judgment are premised upon a number of allegations to which the Association and its members have special industry knowledge—including allegations relating to the demand

2

for unblended fuel among retailers and distributors, the circumstances governing whether retailers and distributors choose to blend E10 below the terminal rack, the processes and quality controls used by retailers and distributors who blend E10 below the terminal rack, and extent to which retailers and distributors offer for sale tax credits associated with their production of E10. (*See* Harris Aff. at ¶¶ 7-8.)

The Association respectfully requests that the Court grant its timely motion to intervene because (1) the Association has a direct interest in upholding the validity of the Ethanol Blending Statute, (2) if intervention is denied the Association's ability to protect its interest will be impaired, and (3) the State has consented to this motion.

## ARGUMENT

**I. THE ASSOCIATION SHOULD BE ENTITLED TO INTERVENE UNDER RULE 24(a).**

Rule 24(a) authorizes a party to intervene where (1) the motion is timely, (2) the movant has an interest in the subject matter at issue, (3) denial of intervention would impair or impede the movant's ability to protect its interest; and (4) the movant's interest is not adequately represented by the existing parties. Fed. R. Civ. P. 24(a). The Fourth Circuit has held that "liberal intervention is desirable to dispose of as much of a controversy involving as many apparently concerned persons as is compatible with efficiency and due process." *Feller v. Brock*, 802 F.2d 722, 729 (4th Cir. 1986).

1. *The Motion is timely*. The Association is submitting this motion approximately two weeks after the State filed its answer and before the Court has entered a scheduling order. There is, therefore, no prejudice to Plaintiffs by the timing of this

3

motion. Although Plaintiffs have filed a motion for summary judgment, they did so before a scheduling order was entered establishing the timing and sequence of discovery and dispositive motions. *See* Local R. 26.1(e) ("The planning meeting of counsel required by Fed. R. Civ. P. 26(f) and the report of counsel contemplated by said rule are a mandatory part of the process of formulating a scheduling order."). Even so, the Association filed this motion within days of receipt of Plaintiffs' motion for summary judgment, and so there will be no delay caused by the addition of the Association as a party. This motion, then, is timely under any test. *See, e.g., Gould v. Alleco, Inc.*, 883 F.2d 281, 286 (4th Cir. 1989) (question of timeliness includes consideration of how far the suit has progressed, prejudice to other parties caused by any delay, and the reason for any delay).

2. *The Association has a direct interest in defending the constitutionality of the Ethanol Blending Statute*. Although the State is the proper Defendant in any challenge to a state law, the Association and its Members who blend E10 are the real targets of Plaintiffs' lawsuit. The Ethanol Blending Statute explicitly preserves the right of retailers and distributors (many of whom are Members of the Association) to purchase unblended fuel and blend E10 below the terminal rack. If the law is struck down, it will have a direct and significant economic impact on retailers and distributors—as well as their business and contractual relationships with major oil suppliers—because they will lose any ability to blend E10 below the terminal rack and any access to potential tax credits. The Association, therefore, has a significantly protectable interest in the constitutionality of the statute. *See Teague v. Bakker*, 931 F.2d 259, 261 (4th Cir. 1991)

4

(intervention of right requires showing of a "significantly protectable interest") (quoting *Donaldson v. United States*, 400 U.S. 517, 531 (1971)).

In cases such as this where a law is subject to a challenge "courts have recognized that the interests of those who are governed by those schemes are sufficient to support intervention." 7C C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 1908, at 25 (2d ed. 1986); *see also Dimond v. District of Columbia*, 792 F.2d 179, 192-93 (D.C. Cir. 1986) (intervention allowed in constitutional challenge to District of Columbia's no-fault insurance law); *Washington State Bldg. And Construction Trades Council v. Spellman*, 684 F.2d 627, 629-630 (9th Cir. 1982) (allowing intervention as of right by public interest group that sponsored challenged state referendum approved by voters); *Nynex Corp. v. FCC*, 153 F.R.D. 1 (D. Me. 1994) (intervention allowed by cable trade association to defend the constitutionality of a statute); *Brooks v. Flagg Bros.*, 63 F.R.D. 409, 415 (S.D.N.Y. 1974) ("where specific segments of an industry would be vitally affected by a declaration that the statute which governs their business conduct is unconstitutional, there is little reason to exclude them from participation").

3. *If the Court denies intervention, it will impair the Association's ability to protect its interest in blending E10 below the terminal rack.* The Association's ability to protect its interest in the constitutionality of the Ethanol Blending Statute will be impaired if it is not entitled to intervene in this case. If the Court were to strike down the Ethanol Blending Statute, the Association would not have a right to appeal unless it was a party to this litigation. And if the Association were to pursue a collateral or subsequent lawsuit, doctrines of issue preclusion or *stare decisis* may be raised as a potential bar.

5

*See United Guar. Residential Ins. Co. of Iowa v. Philadelphia Savings Fund Soc'y*, 819 F.2d 473, 477 (4th Cir. 1987); *Newport News Shipbuilding & Drydock Co. v. Peninsula Shipbuilders' Assoc.*, 646 F.2d 117, 121 (4th Cir. 1981). The Association, therefore, faces the threat of being denied a "seat at the table" to litigate the constitutionality of the Ethanol Blending Statute unless it is permitted to defend its interests as a party to this lawsuit.

4. *The State consents to this Motion*. Plaintiffs' Complaint is premised on many unsupported and speculative factual allegations regarding the blending of E10, the demand for E10 among retailers and distributors, the blending practices of retailers and distributors, the contractual relationships between major oil suppliers and retailers and distributors, and other legal, regulatory, and technical issues surrounding the marketing of E10. The State recognizes that the Association is in the best position to respond many of these issues,[1] and therefore it has informed the Association that it consents to this motion.

The State's consent should satisfy the Association's "minimal" burden to show the State's representation "may be" inadequate[2]—and to overcome any initial presumption of adequate representation where parties share the same objective.[3] Here, the "inadequacy" is not the State's ability to zealously defend the constitutionality of the statute on behalf

---

[1] *See also National Farm Lines v. ICC*, 564 F.2d 381, 383 (10th Cir. 1977) ("Some of the cases in this area stress the fact that petitioners in intervention possess experience and knowledge in a complex area of business which the government agency does not have."); *Nynex*, 153 F.R.D. at 3 ("this Court acknowledges that it will benefit from the additional perspective and arguments that the [regional cable] association will raise as a party to the suit").

[2] *Trbovich v. United Mine Workers of America*, 404 U.S. 528, 538 n.10 (1972).

[3] *See Virginia v. Westinghouse Elec. Corp.*, 542 F.2d 214, 216 (4th Cir. 1976).

6

of the public, but the State's ability to represent the specific interests of the Association without the expertise and institutional knowledge that the Association, as an entity or through its Members, can bring to issues regarding the relationships between retailers and distributors and major oil companies with respect to the marketing and sale of E10. (Harris Aff. ¶¶ 7-8.) For example, many of the Plaintiffs' preemption arguments are based on assumptions about the demand for unblended fuel among retailers and distributors, what the retailers and distributors do with such fuel, the processes by which retailers and distributors will blend E10 below the terminal rack, and whether and to what extent retailers and distributors sell tax credits association with their blending of E10. The Association and its members are well positioned to address these arguments in defense of its interests.

## II.   THE ASSOCIATION IS ENTITLED TO PERMISSIVE INTERVENTION UNDER RULE 24(b)

Rule 24(b) also permits intervention where "an applicant's claim or defense in the main action have a question of law or fact in common . . . . In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." *See* Fed. R. Civ. P 24(b).

The Association's defenses raises the same questions of law or fact as those at issue in the lawsuit—the constitutionality of the Ethanol Blending Statute. The Association can help further develop the record in this case by responding to specific industry-related issues regarding ethanol blending and the practices and processes of its

7

members. The Association does not intend to inject new or unrelated claims unrelated to the statute at issue.

The parties will not be prejudiced by the Association's intervention. There has been no scheduling order entered in this case. The Association, therefore, would have an opportunity to participate in case management conferences so that any case management issues could be addressed in a single order. Even if such conferences had taken place, the Association stands ready to join the case in progress in a manner that will not unduly delay the proceedings. By contrast, the Association would be prejudiced if intervention is not granted because it will have lost an opportunity to defend a statute that has a direct impact on the business activities of its members. *See, e.g., Brooks v. Flagg Bros., Inc.*, 63 F.R.D. 409, 415 (S.D.N.Y. 1974) ("in this situation where specific segments of an industry would be vitally affected by a declaration that the statute which governs their business conduct is unconstitutional, there is little reason to exclude them from participation").

**CONCLUSION**

For the reasons explained above, the Court should grant the Association's motion to intervene under either Rule 24(a) or Rule 24(b). In the alternative, the Court should allow the Association to participate as *amicus curiae* with the right to access discovery materials for the purposes of preparing a substantive brief(s) on the merits of this lawsuit.

Respectfully submitted this the 10th day of October, 2008.

/s/ A. Bartlett White
Harold W. Berry, Jr.
N.C. State Bar No. 317
A. Bartlett White
N.C. State Bar No. 10104
HATCH, LITTLE AND BUNN, L.L.P.
Post Office Box 527
Raleigh, North Carolina 27602
htberry@hatchlittlebunn.com
abwhite@hatchlittlebunn.com
Telephone: (919) 856-3977
Facsimile: (919) 857-3977

*Attorneys for the North Carolina Petroleum and Convenience Marketers Association*

9

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing Memorandum in Support of Motion to Intervene with the Clerk of Court using the CM/ECF system, and deposited a copy of the same in the United States Mail, first-class postage prepaid, addressed as follows:

| |
|---|
| Burley B. Mitchell, Jr.<br>Pressly M. Millen<br>W. David Edwards<br>Womble Carlyle Sandridge & Rice, PLLC<br>150 Fayetteville Street, Suite 2100<br>Raleigh, NC  27602 |
| Robert A. Long<br>Keith A. Noreika<br>Mark W. Mosier<br>Covington & Burling LLP<br>1201 Pennsylvania Avenue, N.W.<br>Washington, D.C.  20004 |
| Mark Davis<br>Special Assistant Attorney General<br>N.C. Department of Justice<br>Post Office Box 629<br>Raleigh, NC  27602 |

This the 10th day of October, 2008.

/s/ A. Bartlett White
A. Bartlett White
N.C. State Bar No. 10104